WILMA J. COX AND GEORGE W. COX, APPELLANTS, *v.* HEERS, INC., A CORPORATION; ACE PLUMBING & HEATING CO., A CORPORATION; E. B. MARSHALL, DOING BUSINESS AS MARSHALL APPLIANCE STORE; TWIN LAKES VILLAGE, INC., A CORPORATION; GENERAL ELECTRIC COMPANY, A CORPORATION; GENERAL ELECTRIC SUPPLY CO., RESPONDENTS.

No. 4461

February 5, 1963                    378 P.2d 533

66

*Foley Brothers,* of Las Vegas, for Appellants.

*Morse & Graves,* of Las Vegas, for Respondents Heers, Inc., and Twin Lakes Village, Inc.

*Clarence Sundean,* of Las Vegas, for Respondent Ace Plumbing & Heating Co.

*Jones, Wiener & Jones,* of Las Vegas, for Respondent E. B. Marshall.

*V. Gray Gubler,* of Las Vegas, for Respondents General Electric Company and General Electric Supply Co.

## OPINION

By the Court, MCNAMEE, J.:

This is a personal injury accident brought by Wilma J. Cox and her husband, who is joined because of alleged loss of consortium, against several defendants. The complaint alleges that a hot water heater in her house malfunctioned by reason of defects therein and, as a result, an explosion occurred which caused her physical injury. The house was a tract house. Heers, Inc., being the owner of the tract, was joined as a defendant. Twin Lakes Village, Inc., the general contractor for the tract, Ace Plumbing & Heating Co., the plumbing subcontractor, E. B. Marshall, doing business as Marshall Appliance Store, General Electric Company, and General Electric Supply Co., were also joined as defendants. The theory of liability as to all defendants was negligence, either in the manufacture, assembly, installation, or service of said water heater. General Electric Company and Heers are also charged with breach of warranty.

After appellants had presented their evidence and rested, motions for dismissal were granted as to all defendants except General Electric Company and General Electric Supply Co.

Formal judgments of dismissal were entered in favor of Ace Plumbing & Heating Co., Heers, Inc., and Twin Lakes Village, Inc., and notices of entry of said judgments were served on December 8, 1960, and filed that day or the following day. No formal judgment of dismissal was signed with respect to defendant Marshall.

Upon completion of the trial before the court without a jury, judgment was then entered in favor of General Electric Company and General Electric Supply Co. on January 10, 1961. Thereafter, plaintiffs moved for a new trial upon the grounds of insufficiency of the evidence to justify the verdict or other decision, and that it is against law. An order denying the same was made May 24, 1961.

Plaintiffs appeal from the judgment of January 10, 1961, and from the order denying new trial. No appeal was taken from any of the judgments of dismissal.

The evidence shows that on the morning of November 30, 1956, Mrs. Cox was about to wash some clothes in her electric washer. She testified that she heard a noise coming from the washer-dryer, and thinking that the appliance might be leaking water, she got on her hands and knees to look under it and saw smoke coming out of the keys. She reached up to turn the electricity off, and remembers nothing more. She told a neighbor that an explosion had taken place. Marshall, the repairman, was summoned immediately. A neighbor testified that the room looked as though an explosion had taken place, as did Mrs. Cox's husband who examined the room some hours after the incident. Marshall, on the other hand, said there was no evidence of any explosion and that the only damage to the electric appliances was blown fuses caused by the welding of two small wires. Mrs. Cox's theory of the case was that the explosion blew open the door of the washer-dryer with such force as to knock her across the room; however, her doctor testified that she had no bruises, burns or external injuries

of any sort. From two previous accidents she had been receiving compensation from the Nevada Industrial Commission, because of a finding of 40 percent permanent disability to her hip and left buttock. She contends that these former injuries became aggravated because of the incident of which she now complains.

The lower court did not find that such an incident took place. The court's decision in this respect, in part, is as follows:

"Whether or not the doctrine of res ipsa loquitur would apply in the instant case, upon reflection does not present the principal problem. In order to apply any doctrine resulting in liability it first becomes necessary to determine what happened. In the matter before the court the question resolves itself into 'Did anything happen to the plaintiff?'

"The plaintiff has a personal history of a degenerative condition in the hip joint. She complained, since the last accident prior to the one now before the court, of continuing pain and the doctor testified that she once had a permanent forty (40) per cent disability and at the time of the trial was still a disabled person by reason of the hip condition.

"The physical facts, in the light of her own history, present a complicated problem because if it were established preponderantly that something did happen to the plaintiff and that whatever happened was caused by the negligence of the defendants, most certainly damages were extensive. The plaintiff has a chunk of metal which she uses as a substitute hip, in effect, and that in itself is most unpleasant to contemplate for the balance of anyone's life. Yet sympathy alone, as is well established, cannot justify a legal conclusion.

"If the court could be satisfied that plaintiff's theory of what happened really did happen, it might not be too difficult to resolve the chain of events which could impose liability. Certainly the melting of the insulation around the jumper wires could have started a chain of events. Yet assuming everything the plaintiff says to have happened really did happen, up to the point

where the steam got into the tumbler without any outlet, most certainly the door of the washing machine would have had to fly open with tremendous force.

"From the position that the plaintiff was in, looking underneath the washing machine, the door would have had to hit her a severe blow probably across one side of her face, at least half of her head. Yet there were no bruises whatsoever on her. She was not scalded from hot steam, which would be a natural conclusion to draw in the light of the testimony. She was not even wet. If the door did not fly open with tremendous force then the trigger of the door latch would have been light, or easily unlatched, and there couldn't have been a strong explosive force.

"Many conjectures can be made as to what happened to the plaintiff, i.e., that she fainted, blacked out, fell and is suffering a memory lapse. Because of the absence of any marks, bruises or burns, the court cannot hold that plaintiff's theory is established.

"Going backward from that point, the court is in doubt as to whether or not the hot or over-heated water could jump from the one outlet, the one or two inch air space and into the funnel without considerable dispersion. As hard as both parties tried to establish their respective point as to that, it comes down to one side saying 'yes it did' and the other side saying 'no it didn't.' If we assume that the full velocity of a jet steam stream went directly into the intake to the tumbler, we have the problem of the relief pressure valve providing a cutoff and at least two other outlets that would allow steam to escape thus reducing the pressure inside the tumbler.

"Much has been made of the counter top being 'blown' up at one corner. First of all the testimony of the husband was completely refuted when the court saw with its own eyes that there were no nails as said husband had testified. As a matter of fact, the court will not accept the testimony of the husband as to events which occurred after the so-called accident in question. The Court cannot see how a person involved in litigation

can indulge in self-help to such an extent as to positively testify to three or four nails sticking out of the counter top when there was no such thing.

"The case was well tried. Most certainly much more evidence was permitted into the record by the court than would ordinarily be permitted had there been a jury. The court, attorneys and witnesses conducted a demonstration of the operation of the water flow into the washing machine, demonstrated the use of the relief pressure valve, in fact operated the relief pressure valve in evidence and found that a slight breath into the pressure valve operated the valve. The Court then viewed the washing machine in question at the premises, observed plaintiff's counsel in the same position as the plaintiff had testified she had assumed, and the court also assumed the same position. A review of the entire case and all factors fails to convince the court as to what really did happen to the plaintiff. This is not like the case where a wheel from an automobile suddenly became dislodged and rolled along the street injuring a plaintiff. We know in that type of situation that a wheel injured the plaintiff. Here we don't know whether there was an explosion. We don't know if the plaintiff fainted, fell over, stumbled, was hit by a blast of hot steam, washing machine door, slipped and fell, suffered a memory lapse or anything else. We just know that she bent over to look underneath the washing machine, reached up to turn off the machine and then found herself later in a sitting-kneeling position against the wall of the kitchen a few feet away with a tender mark on the back of her head. On this the court cannot base a judgment in favor of the plaintiff."

The record discloses a substantial conflict of evidence whether an explosion could have occurred or actually did occur. The implied finding that an explosion did not occur is supported by substantial evidence. We, therefore, will not disturb the judgment resulting therefrom.

Appellant Wilma J. Cox having failed to prove to the satisfaction of the trial court that she was injured as

a result of an explosion is not entitled to judgment against any of the respondents. Cf. McKenna v. Ingersoll, 76 Nev. 169, 350 P.2d 725. It is therefore unnecessary to consider whether the doctrine of res ipsa loquitur is applicable.

The judgment and the order denying a new trial are affirmed.

BADT, C. J., and THOMPSON, J., concur.